CALDWELL v. POWELL.

1. EQUITABLE SET-OFF. *What a proper subject of.* An account for board, lodging and attention to a party for a series of years, where, from the facts and circumstances of the case, she appears to have acquiesced in the justice of the same, but which had not been paid, is a proper subject of set-off in equity, after her decease, against the amount of a note executed to her shortly before her death by the party rendering the account.

2. SAME. Her executor, under such circumstances, will be perpetually enjoined from collecting a note taken by him from the claimant of the set-off in lieu of the one he had previously executed to his testatrix, and so much of the account as was equal to the amount of the note at the time it was executed to her will be allowed in satisfaction of the same.

Caldwell *v.* Powell.

3. SAME. *Statute of limitations.* Thus far the statute of limitations does not apply to any of the items in the account, the rule being that, as between parties having mutual demands agreed and intended to be made set-offs, but which has been prevented by unforeseen circumstances, without fault or fraud on the part of either, the statute shall not be allowed to operate as a bar to an equitable settlement between them; but as to the balance of the account over and above the amount of said note, the statute may be relied on to defeat such of the items as fall within it.

Case cited: Dougherty *v.* Wingfield, MS.

FROM HAWKINS.

From the Chancery Court at Rogersville. H. C. SMITH, Chancellor.

HEISKELL, LOGAN & MCKINNEY for complainant.

F. M. FULKERSON for defendant.

NICHOLSON, C. J., delivered the opinion of the court.

The bill in this case is filed by A. P. Caldwell to have a perpetual injunction against the collection of a note of $864.09, dated 24th of June, 1859, executed by A. P. Caldwell as principal, and I. W. Rogan, C. J. McKinney and A. A. Kyle as sureties, payable to Samuel Powell, executor of Nancy Nugent, at one day after date. This note was executed in lieu of one for about the same amount given by A. P. Caldwell and I. W. Rogan, dated October 16, 1858, and payable to Nancy Nugent.

The history of the two notes, as given by A. P. Caldwell in his bill and deposition, is as follows:

Nancy Nugent, an old Irish lady, lived and boarded

at the house of Caldwell for about seven years, from 1851 to 1858, without any specific contract as to the payment of Board. She had about $3,000 in money, which she kept loaned out in the hands of merchants, Soon after coming to Caldwell's house to live, she spoke to him about paying for the trouble she gave him and his family. In 1853 or 1854 she executed her will, making I. W. Rogan her executor. At the time of making her will, she spoke of what she owed Caldwell for taking care of her, and again in 1855 or 1856 she spoke of compensating him, and handed to him a note on John Coffin and others, for between six and seven hundred dollars, to use. The note executed by Caldwell and Rogan on the 16th of October, 1858, for about eight hundred dollars, was given for the principal and interest of the Coffin note. A short time before her death, Nancy Nugent left the house of Caldwell and went to that of an Irishman by the name of Joyce. She was a Roman Catholic, and went to Joyce's where she could better enjoy her religious sentiments in the company of a Roman Catholic priest who had recently come to Rogersville. Soon after removing, and a few days before her death, she sent for Caldwell, and, after requesting all persons present to leave the room, she told Caldwell that her executor said the safest way to settle everything between herself and Caldwell, was for Caldwell to give his note for the amount of the Coffin note before given to him, and for Caldwell to get I. W. Rogan to sign the note, and after her death there would be no trouble to settle the matter. Caldwell says, be-

lieving, as he then did, that Rogan was the executor, and that she was acting in entire good faith, he did not hesitate to comply with the request of a dying woman, and therefore executed the note for about $800, on the 16th of October, 1858. Within a very few days afterwards Nancy Nugent died, and in a short time it was discovered that she had made another will, in which Samuel Powell was appointed her executor. It is not distinctly stated, but we infer that the new will was made after she went to Joyce's, but whether before or after the note was executed, does not clearly appear. It is in proof, that for the short time she was at Joyce's, after leaving Caldwell's, she compensated Joyce with about $250, and gave to the priest an order on J. A. McKinny for $50, which was paid. The note for about $800 came into the hands of Powell as executor, and being doubtful of the financial condition of the makers, Caldwell and Rogan, and not caring to press them, he agreed that the note might be renewed upon their giving a new note with other sureties. This was done, and on the 24th of June, 1859, the note now in controversy was executed in lieu of the former note. At the time of giving the note, Caldwell took from Powell the following paper:

"A. P. Caldwell, Jas. W. Rogan, C. J. McKinney and A. A. Kyle have this day executed to me, as executor of Nancy Nugent, deceased, a note for $864.09, said note executed in lieu of a note given to Nancy Nugent during her life, dated 16th of October, 1858, and due one day after date, executed by A. P. Cald-

well and Jas. W. Rogan, and the same is a settlement of no other matter between us, and if there is any claims, the same stand as they did previous to the execution of the said last named note.

"May 30, 1859.          Sam. Powell, ex'r, etc."

Caldwell states that when he executed. the note to Powell, he filed a copy of his account against Nancy Nugent for board and attention, as follows:

Miss Nancy Nugent, in account with A. P. Caldwell:
For board, lodging, and attention during various
  spells of sickness, from the commencement of
  1851 to the 1st of October, 1858—seven years
  and nine months—$100 per year...................$775 00
Interest three years to date ..................... ..... 139 50

  June 1, 1859.                         $914 50

Powell, in his evidence, denies that this account was filed with him, or anything said about it; insists that Caldwell was entitled to no compensation; that the execution of the two notes is conclusive against him, and relies upon the statutes of limitations of two years and six years.

There is but little controversy about the fact that Nancy Nugent made the house of Caldwell her home from 1851 to 1858, but it is shown that she was frequently absent on visits to the neighbors, staying from a day or two to a week or two. The proof is satisfactory as to the attention of Caldwell and family to her wants and comforts, in health and in sickness, and as to the charges for these attentions, board, etc., made by Caldwell being entirely reasonable.

Caldwell *v.* Powell.

But it is insisted by Powell that, as Nancy Nugent had been in the habit of living around with various families without being charged for board, Caldwell should be regarded as giving her a home gratuitously. There is nothing in the relation between the parties on which to raise the presumption that Caldwell's services were gratuitous. On the contrary, Caldwell proves that he notified her that she would have to pay for board, lodging, etc., and that she acquiesced in it as right. He proves, also, that on several occasions they conversed on the subject, in which conversations she recognized his right to charge for her board. We are satisfied by the proof that it was understood, both by Caldwell and Nancy Nugent, that she was to pay for board, etc.

We have alluded to the fact that, in 1855 or 1856 as Caldwell states in his bill, or in 1854 as stated in his deposition, Nancy Nugent gave him a note for six or seven hundred dollars on Coffin and others, and that he collected and used the money, and that on the 16th of October, 1858, he accounted to her for the amount of the Coffin note and interest. It becomes important to inquire as to the real purpose with which the Coffin note was given to Caldwell. He says in his bill that she voluntarily gave it to him, in consideration (as she herself declared) of the trouble and expense complainant and his family had borne and endured in boarding and caring for her through a series of years. In his deposition he adopts the allegation of his bill as part of his evidence, and says, in addition, that the existence of his account

against Nancy Nugent was well known to and understood by her at the time the note was executed to her by him and J. W. Rogan, and it was intended that the note should go in part payment of the account, and she knew that the account was larger than the note, and that she would have to pay the balance to complainant.

In answer to the question of defendant, why complainant did not settle with her and deduct the same out of the Coffin note at the time he executed the note on the 16th of October, 1858, complainant said: "She was in no condition as to health, it was but a few days before she died, and I gave the note under the impression that I would have no difficulty in settling with her executor or administrator."

This testimony of Caldwell is not contradicted by any witness, and we must take it to be true, although it seems unreasonable that Nancy Nugent should have sent for him to give his note for the Coffin debt when she had given him the Coffin note in consideration of her indebtedness to him for board. Perhaps his explanation of this transaction ought to be received as sufficient, in view of other facts and circumstances, which indicate that, after leaving Caldwell's house and going to Joyce's, she was under influences which caused her to request Caldwell to give his note, under the assurance that the matter could be settled without trouble with her executor. He signed the note under the impression that Rogan, who signed it also, was the executor, and as he was presumed to know the circumstances, it is not unreason-

Caldwell v. Powell.

able that, in view of the dying condition of Nancy Nugent and of his expectation of settling with Rogan without trouble, he should have executed the note merely to gratify her request.

When Caldwell executed the note to Powell in June, 1859, he took from Powell an acknowledgment that nothing else was settled thereby but the Coffin note, and that whatever claims he had were not affected thereby. This strongly corroborates the statement of Caldwell as to the circumstances under which he executed the note to Nancy Nugent. Our conclusion, from all the proof and the circumstances, is, that it was understood by Caldwell and Nancy Nugent when the note was executed that it would be received by her executor in satisfaction *pro tanto* of his account against her for board and attention.

Without, therefore, determining whether Nancy Nugent was guilty of fraud or not, either voluntarily or under improper influences, in procuring the note to be executed, we are satisfied that it would be inequitable to enforce the same against complainant.

In the case of *Ann Dougherty* v. *A. M. Wingfield*, determined at Nashville at the December term, 1872, not reported, this court held that a court of equity will not allow the statute of limitations to be made an instrument of injustice between parties where there are mutual demands agreed and intended to be made set-offs, but which has been prevented by unforeseen circumstances, where there is no fault or fraud: 2 Story's Eq., 14, 35. The principle of that case is strictly applicable to the facts of the present, and set-

tles it.   It follows that as to so much of the account
of Caldwell against Nancy Nugent as was equal to
the amount of the note of Caldwell to Nancy Nugent
dated on the 16th of October, 1858, the same was
satisfied thereby, and that the statute of limitations
has no application, except as to the balance of the
account after deducting the amount of the note.   As
to the note executed on the 24th of June, 1859, com-
plainant is entitled to a perpetual injunction, as that
note was given in lieu of the note of October 16,.
1858, and was based upon no other consideration.

The decree of the Chancellor is reversed, and a
decree for complainant.